# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| GINA MOSUNIC, <br>     Plaintiff, <br><br> v. <br><br> NESTLÉ PREPARED FOODS COMPANY, <br><br>     Defendant. | C.A. No. 15-380-M-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Gina Mosunic has sued her former employer, Nestlé Prepared Foods Company ("Nestlé"), alleging gender-based disparate treatment, in violation of the Rhode Island Fair Employment Practices Act (FEPA) and the Rhode Island Civil Rights Act (RICRA); hostile work environment, in violation of RICRA; and retaliation, in violation of FEPA and RICRA. ECF No. 5 at ¶¶53-73. Nestlé moves for summary judgment. ECF No. 17. Because the Court finds that there are genuine disputes of material fact regarding the Ms. Mosunic's gender-based disparate treatment and retaliation claims, summary judgment on those counts is DENIED. However, the Court finds that there is no evidence to support the hostile work environment claim, and therefore summary judgment on that count is GRANTED.

## BACKGROUND

In October 2012, Joseph's Gourmet Co. Pasta and Sauce ("Joseph's Gourmet"), which Defendant Nestlé owned, hired Ms. Mosunic as an account manager. Ms. Mosunic was a salaried employee. Her sales territory, as an account manager, included Rhode Island, Connecticut, and Massachusetts. She worked from her home in Cranston, Rhode Island, and reported to Timothy Healy, who was based in Minnesota. Mr. Healy communicated with his sales team largely by phone and email.

On March 25, 2013, Ms. Mosunic informed Mr. Healy that she was pregnant. Ms. Mosunic contends that Mr. Healy's treatment of her changed drastically after this announcement. She spoke to Human Resources about it on March 27, 2013, and again on May 7, 2013.

Ms. Mosunic has presented emails sent to her from customers and from Mr. Healy before her pregnancy announcement to demonstrate that she had been doing her job satisfactorily. For example, she provides an email from December 2012 where Mr. Healy writes, "Thank you. Well done." Also in December 2012, a sales support administrator from U.S. Foods, Ms. Mosunic's largest account, wrote, "you're the best thanks," in response to Ms. Mosunic having provided information about a product. In February 2013, Mr. Healy wrote to Ms. Mosunic and Steve Sprague, another account manager, about a change in company policy and added, "Thank both of you for helping make Joseph's a better company—together, we'll overcome any negative

feelings people have about 'our' company." Again, in February 2013, Ms. Mosunic provided a customer with some information and he responded, "You're good!"[1]

About a month after announcing she was pregnant, Ms. Mosunic had a meeting with her largest client, and Nestlé's second largest client, U.S. Foods. Ms. Mosunic contends that the U.S. Foods representative, Rich Querci, "screamed in [her] face" because he wanted more marketing support from Joseph's Gourmet. Ms. Mosunic ended the meeting and wrote to Mr. Healy to explain what had happened. She wrote, "I just had to abruptly excuse myself from a US Foods Peabody meeting because the director of sales, Rich Querci, unnecessarily became extremely combative and threatening. I told him that I had to end the meeting because he was attacking me." Mr. Querci contends that he only asked her standard questions about attending district meetings and that Ms. Mosunic did not provide answers to those questions. He denies having raised his voice or having threatened Ms. Mosunic.

Two weeks later, Ms. Mosunic met with Mr. Healy at a Joseph's Gourmet office in Haverhill, Massachusetts. Ms. Mosunic described Mr. Healy as "extremely agitated." When she asked to involve Human Resources and expressed her belief that Mr. Healy had been discriminating against her, he threw a pen across the room. Mr. Healy later described Ms. Mosunic as "combative" and "defensive" during that meeting.

---

[1] Additionally, a customer/distributor wrote to Ms. Mosunic on May 1, 2013 (just days before the suspension), "[W]anted to thank you for helping me with my customer and the 30 cases of tortellini! Customer was very happy."

3

Mr. Healy submitted a memorandum to Human Resources, dated May 13, 2013, recommending that Nestlé suspend Ms. Mosunic, as Mr. Healy did not have the authority to suspend employees. Mr. Healy's memorandum described a long list of problems with Ms. Mosunic's job performance dating back to November 2012, just one month after she started working for Joseph's Gourmet. Yet, Nestlé has not presented any evidence that documents any of these problems with Ms. Mosunic before the pregnancy announcement.[2]

Once Nestlé's corporate headquarters in Ohio approved the suspension, the same day as he sent the memo, Mr. Healy called Ms. Mosunic to inform her. Ms. Mosunic had driven to New Hampshire that day for a customer meeting that Mr. Healy was also scheduled to attend. Mr. Healy has stated that he did not intend for Ms. Mosunic to make a wasted trip, but he did not receive approval from corporate headquarters until after she arrived in New Hampshire. Mr. Healy and other members of the sales team picked up Ms. Mosunic's accounts upon her suspension.

Ms. Mosunic received a regular paycheck until June 29, 2013, and then received short-term disability benefits due to her pregnancy. After she gave birth on November 12, 2013, she collected temporary disability insurance benefits. On December 30, 2013, she resigned from Joseph's Gourmet, and the following day, Nestlé sold Joseph's Gourmet and dismissed its remaining employees.

---

[2] Mr. Healy did describe emails sent to him by a co-worker, Mr. Sprague, complaining about Ms. Mosunic. These two emails are the only written evidence before the Court that demonstrate any issue with Ms. Mosunic prior to her pregnancy announcement.

4

## LEGAL STANDARD

Per Rule 56(a) of the Federal Rules of Civil Procedure, the Court shall grant summary judgment when there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." To determine whether there is a genuine dispute as to a material fact, the Court must assess whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The Court must construe the facts in the light most favorable to the non-moving party. *Audette v. Town of Plymouth*, 858 F.3d 13, 20 (1st Cir. 2017). Furthermore, "[t]he Court does not 'weigh the credibility of the testimony,' but presumes 'that a rational factfinder would accept it as stated by the witness.'" *Delgado v. Pawtucket Police Dep't*, 747 F. Supp. 2d 341, 349 (D.R.I. 2010) (quoting *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 68 (1st Cir. 2002)). The moving party bears the burden of identifying the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968). Then, the burden shifts to the non-moving party to identify at least one genuine issue of material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994).

## DISCUSSION

### I. <u>Gender-Based Disparate Treatment</u>

Ms. Mosunic brings claims for gender-based discrimination under FEPA (R.I. Gen. Laws § 28-5-1 et seq.) and RICRA (R.I. Gen. Laws § 42-112-1 et seq.). The framework used to assess gender discrimination claims under FEPA and RICRA are "analytically identical." *Reilly v. Cox Enters., Inc.*, C.A. No. 13-785-S, 2014 WL

4473772, at *1 n.1 (D.R.I. Apr. 16, 2014). Rhode Island courts use the three-step *McDonnell Douglas* burden-shifting framework to analyze FEPA and RICRA claims when there is no direct evidence of discrimination. *See Newport Shipyard, Inc. v. R.I. Comm'n for Human Rights,* 484 A.2d 893, 898 (R.I. 1984).

### A. Step One - Prima Facie Case

Step one of the *McDonnell Douglas* burden-shifting framework requires the plaintiff to establish a prima facie case of discrimination. *DeCamp v. Dollar Tree Stores, Inc.,* 875 A.2d 13, 21 (R.I. 2005). To establish a prima facie case in this case, Ms. Mosunic must show that (1) she was pregnant (2) her job performance had been satisfactory, but (3) the employer nonetheless took some adverse action against her while (4) continuing to have her duties performed by a comparably qualified person. *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 421 (1st Cir. 1996). Courts describe the prima facie burden under the *McDonnell Douglas* analysis as "a small showing," "not onerous," and "easily made." *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir. 2003) (citations omitted).

Ms. Mosunic meets the first element: she was, in fact, pregnant. Regarding the second element, the emails from customers and from Mr. Healy that Ms. Mosunic has put forth are evidence that she was doing her job satisfactorily. Although the emails were few and were not extremely detailed, they suffice at this stage of the *McDonnell Douglas* framework where all that is required is a "small showing."

6

The parties disagree over whether Ms. Mosunic has met the third element. Nestlé argues that Ms. Mosunic's paid suspension is not an adverse action.³ Suspension, regardless of whether it is paid, is adverse to the employee in and of itself. It is punitive in nature and at a minimum becomes part of one's permanent employment record, affecting one's ability for advancement, or to find other future employment, or gaining valuable job experience. Therefore, Ms. Mosunic has met the third element for a prima facie case. Lastly, Ms. Mosunic has established the fourth element because Joseph's Gourmet continued to have her duties performed by a comparably qualified person. Upon her suspension, Mr. Healy and other members of the sales team handled Ms. Mosunic's accounts.

Ms. Mosunic has established a prima facie case, and therefore we move to the next step of the *McDonnell Douglas* framework.

B.  *Step Two - Defendant's Non-Discriminatory Reason*

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *DeCamp*, 875 A.2d at 21-22. The burden on the defendant is one of production rather than persuasion. *Neri v. Ross-Simons, Inc.*, 897 A.2d 42, 49 (R.I.

---

³ Nestlé cites to case law from other circuits that hold suspension with pay pending an investigation is not an adverse employment action. *See Jones v. Se. Pa. Transp. Authority*, 796 F.3d 323, 326 (3rd Cir. 2015) (collecting cases). These cases are distinguishable and are not binding on this Court; therefore, the Court declines to follow them. Instead, the Court adopts the more persuasive reasoning of the Ninth Circuit in *Dahlia v. Rodriquez*, which held that the loss of experience while on administrative leave, *inter alia*, could constitute an adverse employment action. 735 F.3d 1060, 1078 (9th Cir. 2013).

2006). Clearly, Mr. Healy's memorandum to Human Resources recommending suspension and delineating issues he had with Ms. Mosunic meets this requirement. He writes for three pages about Ms. Mosunic's poor job performance and describes a customer's dissatisfaction with her. Nestlé's production of legitimate reasons then eliminates, at this stage, the presumption of discrimination created by Ms. Mosunic's prima facie case. Therefore, we move to the third and final step of the *McDonnell Douglas* framework.

C. *Step Three - Proof of Pretext*

The final step of the *McDonnell Douglas* framework requires the plaintiff to prove that the defendant's reason for the adverse employment action was merely pretext for discriminatory animus. *Id.* at 50; *DeCamp*, 875 A.2d at 21-22. The Court finds that Ms. Mosunic has put forth sufficient evidence for a jury to find reasonably that Nestlé's reasons for the suspension were merely pretext for discriminatory animus, and therefore summary judgment is not appropriate.

Mr. Healy wrote his memorandum, recommending suspension, just seven weeks after Ms. Mosunic's pregnancy announcement. While temporal proximity alone is insufficient to prove pretext, it can be relevant evidence when combined with other facts. *Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 10 (1st Cir. 2012). Here, the memorandum lists issues with Ms. Mosunic's job performance dating back to just one month after she started working for Joseph's Gourmet, yet there is no evidence that anyone ever documented any of these issues before Ms. Mosunic announced that she was pregnant. The only issue listed in Mr. Healy's

memorandum for which there is evidence pre-pregnancy announcement is a co-worker's complaints about Ms. Mosunic. At best, this presents a credibility issue that a jury must weigh.

A jury could reasonably infer from the lack of documented criticism before the pregnancy announcement (combined with various pre-pregnancy announcement positive reviews by supervisors and customers) and the three pages of criticism in the suspension memorandum written after the pregnancy announcement that Nestlé's stated reasons for suspending Ms. Mosunic were pretextual. If the suspension memo was not a pretext, a jury could reasonably conclude, Nestlé would have issued written warnings or would have put Ms. Mosunic on a performance improvement plan before jumping immediately to suspension.

Nestlé also argues to support the legitimacy of their proffered reasons for the adverse employment action, that shortly before her suspension, Ms. Mosunic walked out on her largest client, U.S. Foods, and that she was unprepared for the meeting. However, Ms. Mosunic's version of the facts surrounding that meeting is very different, and therefore there is a genuine dispute that requires a jury's review. Given the evidence Ms. Mosunic has put forth (good feedback, no discipline before the pregnancy announcement and lengthy criticism only after the pregnancy announcement), and the factual dispute surrounding the U.S. Foods meeting, summary judgment on the issue of gender-based discrimination is not appropriate and is denied. Accordingly, the Court denies Nestlé's Motion for Summary Judgment on Ms. Mosunic's gender-based disparate treatment claim.

II. <u>Retaliation</u>

To establish a prima facie case for retaliation under FEPA and RICRA, Ms. Mosunic must establish that (1) she engaged in protected conduct, (2) she experienced an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action. *Shoucair v. Brown Univ.*, 917 A.2d 418, 427 (R.I. 2007) (citation omitted). Ms. Mosunic did engage in protected conduct when she complained to Human Resources about Mr. Healy's treatment of her following her pregnancy announcement. The Court also accepts Ms. Mosunic's paid suspension as an adverse employment action, as argued above. The question presented, therefore, is whether there is a causal connection between her complaint to Human Resources and her suspension.

Ms. Mosunic's initial complaint to Human Resources was on March 28, 2013, her second complaint was on May 7, 2013, and Mr. Healy recommended her suspension on May 13, 2013. The United States Supreme Court has held that temporal proximity alone is generally not enough unless it is "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citation omitted)). The First Circuit has found a period of roughly one month between the protected activity and the adverse employment action to be sufficiently close. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 26 (1st Cir. 2004). Here, more than a month passed

after Ms. Mosunic first complained to Human Resources before Mr. Healy recommended her suspension, but only days passed between Ms. Mosunic's second complaint and her suspension. This very close temporal proximity is enough to establish a causal relationship, and therefore Ms. Mosunic has established a prima facie case for retaliation.

Once the plaintiff has established a prima facie case for retaliation, the *McDonnell Douglas* framework is used and the burden shifts to the defendant to put forth a non-retaliatory reason for the adverse employment action. *Id.* Mr. Healy's memorandum satisfies this requirement, as it did at this step of the analysis for gender-based discrimination. Therefore, the burden shifts back to Ms. Mosunic to prove that the reasons set forth in the memorandum are merely pretext and that her suspension was the result of Nestlé's retaliatory animus. *See id.* The evidence Ms. Mosunic has put forth to prove pretext for gender-based discrimination also serves to prove pretext for retaliation. Therefore, there is sufficient evidence for a jury to decide the question. Accordingly, the Court denies Nestlé's Motion for Summary Judgment on Ms. Mosunic's retaliation claim.

III. <u>Hostile Work Environment</u>

The claim for a gender-based hostile work environment is easily disposed of. Evidence of required gender-based harassment is lacking. *See Ponte v. Steelcase Inc.*, 741 F.3d 310, 320 (1st Cir. 2014) (stating that a claimant must establish evidence of harassment grounded in gender). None of the evidence Ms. Mosunic presented of inappropriate workplace behavior was in any way associated with gender. Ms. Mosunic conceded this at oral argument. Given the lack of evidence of gender-based

harassment, the Court grants Nestlé's Motion for Summary Judgment on her hostile work environment claims.

## CONCLUSION

Ms. Mosunic has provided sufficient evidence for a jury to find reasonably in her favor on her claims of gender-based discrimination and retaliation, and therefore the Defendant's Motion for Summary Judgment on those counts is DENIED. There is a lack of evidence to demonstrate that Ms. Mosunic faced pervasive, gender-related harassment establishing a hostile work environment and therefore the Defendant's Motion for Summary Judgment on the hostile work environment claims is GRANTED.[4] Therefore, the Court DENIES IN PART AND GRANTS IN PART Defendant's Motion for Summary Judgment. ECF No. 17.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

August 16, 2017

---

[4] Nestlé also filed a Motion in Limine. ECF No. 20. That motion is DENIED without prejudice because the matters raised in it include issues of fact that a jury must determine in the first instance.